UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 2:23-cr-00097-JAW-1 |
| | ) |
| CHARLES ALLEN BARNES | ) |

**ORDER ON MOTIONS FOR HOME CONFINEMENT AND APPOINTMENT OF COUNSEL**

An incarcerated defendant moves the court to issue an order commuting his sentence to home confinement and, separately, for appointed counsel to assist him in this matter. Because the Bureau of Prisons has plenary control over the location of an inmate's confinement after a sentence is imposed, the court is without authority to order home confinement and accordingly dismisses the defendant's commutation motion. The court also dismisses the defendant's request for an order appointing counsel post-conviction.

**I.    BACKGROUND**

On September 7, 2023, a federal grand jury indicted Charles Allen Barnes on one count of interstate communication of threat to injure in violation of 18 U.S.C. § 875(c) (Count 1). *Indictment* (ECF No. 3). The indictment included a special finding that Mr. Barnes intentionally selected his victim, an individual referred to as K.T., as the object of the offense described in Count 1 because of K.T.'s actual and perceived race. *Id.* at 2. Mr. Barnes entered a plea of guilty on March 18, 2024. *Min. Entry* (ECF No. 34).

On September 18, 2024, the Court sentenced Mr. Barnes to thirty months of imprisonment, three years of supervised release, and a mandatory special assessment of $100.  *Min. Entry* (ECF No. 51); *J.* (ECF No. 54); *see also Am. J.* (ECF No. 57).  At sentencing, the Court concluded Mr. Barnes had intentionally selected the victim of the charged offense because of the individual's race and, accordingly, applied the three-level sentencing enhancement contained in United States Sentencing Guidelines (U.S.S.G.) § 3A1.1(a).  *Statement of Reasons* (ECF No. 58).

On April 25, 2025, Mr. Barnes wrote a letter to the Court, which the Clerk of Court docketed as a motion for home confinement, in which he asks the Court to "commute [his] sentence to home confinement or halfway house."  *Mot. for Home Confinement* at 2 (ECF No. 63) (*Def.'s Home Confinement Mot.*).  The Government responded in opposition on May 16, 2025.  *Gov't's Resp. to Def.'s Mot. for Commutation of His Sentence* (ECF No. 64) (*Gov't's Opp'n*).  On June 2, 2025, Mr. Barnes filed a motion requesting appointment of counsel to assist him with his request for home confinement.  *Mot. to Appoint Counsel* (ECF No. 65) (*Def.'s Counsel Mot.*).

The Court issues this order to address the Defendant's pending motions for home confinement and for appointed counsel and turns to the home confinement motion first.

**II.  CHARLES ALLEN BARNES'S MOTION FOR HOME CONFINEMENT**

    **A.  The Parties' Positions**

        **1.  Charles Allen Barnes's Motion for Home Confinement**

2

Mr. Barnes's letter begins by informing the Court that he is incarcerated at FCI Milan, in Michigan, over 800 miles from his home, and "[i]t has been seven months since [he] ha[s] seen [his] family." *Def.'s Home Confinement Mot.* at 1-2. He requests that the Court "commute [his] sentence to home confinement or halfway house" so that he may "get clinical therapy, attend batter intervention for domestic viol[]ence and work to support [his] family." *Id.* at 2. Mr. Barnes concludes by saying that he has no disciplinary actions against him, and, further, that he has been humbled by this experience and is remorseful for his actions. *Id.*

### 2. The Government's Opposition

The Government opposes Mr. Barnes's motion. After reporting that the Defendant has served less than a third of his sentence, *Gov't's Opp'n* at 2 (citing Fed. Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 15, 2025)), the Government argues his motion is unavailing because the Bureau of Prisons (BOP) has "wide discretion" to determine an inmate's place of confinement and statutory authority to place an inmate into "any available penal or correctional facility." *Id.* (first citing *United States v. Whalen*, 1:11-cr-00033-JAW, 2013 U.S. Dist. LEXIS 145807 (D. Me. Oct. 8, 2013) (citation amended); then quoting 18 U.S.C. § 3621(b)). The Government asserts that 18 U.S.C. § 3624(c) gives the authority to place an inmate in home confinement not to the sentencing judge, but to the BOP, and 18 U.S.C. § 3621(b) similarly places the authority to designate the location of imprisonment with the BOP. *Id.* at 3. "Once a sentence is imposed," the Government concludes, "BOP is solely responsible for determining an inmate's place of

3

incarceration" and "[a] court has no authority" on this issue. *Id.* (citing, e.g., *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise")).

Insofar as the Court construes Mr. Barnes's motion as a request that the Court recommend to the BOP that he be placed in home confinement, the Government argues the Defendant's motion should likewise be denied. *Id.* at 3 n.1. Acknowledging that § 3621(b)(4) provides that the BOP may consider any statement by the sentencing judge recommending the type of penal institution or correctional facility, the Government asserts this Court has previously interpreted this statutory provision to mean that a sentencing judge may offer a recommendation at the initial imposition of a defendant's sentence, not that a judge, years removed from the imposition of sentence, may interfere with the BOP's designation decision. *Id.* (citing *United States v. Soto*, No. 2:17-cr-00157-JAW, 2022 U.S. Dist. LEXIS 173749, at *28-30 (D. Me. Sept. 26, 2022) (citation amended)).

Finally, the Government argues the Court should deny Mr. Barnes's request for home confinement for the additional reason that, "[c]ontrary to Barnes'[s] assertion that he has been a model inmate, in fact, while he has been incarcerated, Barnes has sent threatening and harassing letters to both his wife and sister, the latter of whom is currently caring for his minor child at the request of the Maine Department of Health and Human Services." *Id.* at 4 (discussing *id.*, Attach. 1, *Letter* (*Def.'s Letter to Sister*); *id.*, Attach. 3, *Letter* (*Def.'s Letter to Wife*)). The Government reports "Barnes'[s] conduct was so disturbing, that his sister sought and obtained a

4

Protection from Abuse [(PFA)] order against the defendant." *Id.* (discussing *id.*, Attach. 2, *Temporary Order for Protection from Abuse*) (*PFA Order*).

B.   Discussion

As the Government accurately observes, the Court has addressed this question before and determined it "does not have the authority that [the defendant] submits it does to modify his sentence to allow for home confinement." *Soto*, 2022 U.S. Dist. LEXIS 173749, at *28. In that decision, addressing a motion for compassionate release brought pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court wrote that, in *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022), the United States Court of Appeals for the First Circuit ruled that the "wide sweep" of the compassionate release provision "does not specifically grant a district court authority to change the site of a defendant's confinement." *Id.* (quoting *Texeira-Nieves*, 23 F.4th at 58). The Court further noted the First Circuit's explanation that "the statute's silence on this point comports with the BOP's 'plenary control . . . over the place of the prisoner's imprisonment,'" *id.* (quoting *Texeira-Nieves*, 23 F.4th at 58) (in turn quoting *Tapia v. United States*, 564 U.S. 319, 331 (2011)), concluding the lack of "any reference to modifying a defendant's location of confinement denotes that section 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home." *Id.* at *28-29 (quoting *Texeira-Nieves*, 23 F.4th at 59). In *Soto*, the Court determined that "[it] does not have the authority to modify [the defendant's] sentence, as he requests, to allow for home confinement." *Id.* at *29.[1]

---

[1]   The procedural posture of *United States v. Soto* is distinguishable from the instant case, as Mr. Soto moved for home confinement within a request for compassionate release brought pursuant to 18

5

The law is imminently clear that the BOP has "plenary control . . . over the place of the prisoner's confinement." *Texeira-Nieves*, 23 F.4th at 58. Here, Mr. Barnes asks the Court to order the BOP to change the location of his confinement, from FCI Milan, where he is currently held, to his home or, alternatively, a halfway house. *See Def.'s Commutation Mot.* at 1-2. Following well-established First Circuit jurisprudence, the Court lacks the authority to modify Mr. Barnes's sentence to allow for home confinement. *See Soto*, 2022 U.S. Dist. LEXIS 173749, at *28.

Furthermore, insofar as Mr. Barnes's letter could be interpreted as a request that the Court issue a recommendation to the BOP regarding the Defendant's place of confinement, the Court, seeing neither legal nor factual justification for such action, declines to do so. In *Soto*, the Court rejected the defendant's assertion that 18 U.S.C. § 3624(c) and 18 U.S.C. § 3621(b)(4) provide the Court authority to make a recommendation to the BOP regarding the location of a defendant's incarceration after sentencing. *Id.* at *29. The Court expressed that it was "dubious" of this argument, observing "[§] 3624(c) clearly gives the authority to place an inmate in home confinement not to the sentencing judge, but to the BOP," and "[§] 3621(b) also clearly places the authority to designate the place of imprisonment to the BOP." *Id.* Noting that § 3621(b)(4) provides that the BOP may consider any statement by the sentencing judge recommending the type of penal institution or correctional facility and "[t]hese recommendations are common at the imposition of a defendant's sentence, . . . the Court does not read this provision as allowing a judge to interfere

---

U.S.C. § 3582(c)(1)(A), while here Mr. Barnes cites no authority for his request. This distinction does not change the result.

6

with the BOP's designation decision long after the imposition of sentence." *Id.* The Court does not depart from its prior conclusion here.

Furthermore, even if the cited provisions allow a court to do so (a dubious proposition), the Court declines to make a recommendation for home confinement or transfer to a halfway house for Mr. Barnes. Mr. Barnes has served less than a third of his sentence and, in addition, the letters and PFA order that the Government attaches to its opposition belie Mr. Barnes's claims that he has "been humbled by [his] experience" and is "truly remorseful for [his] actions." *Def.'s Commutation Mot.* at 2.

To the contrary, these letters, in the Defendant's own words, show an individual threatening his sister, "[t]his place can[]not hold me forever[,] [u]nderstand, hell and all the hordes of Satan, do not compare to the hate I feel for you . . .. Keep looking backward for one day . . . I'll be there. Never forgive. Never forget. Expect me," *Def.'s Letter to Sister* at 1-2, and his wife, "[y]ou owe me a son! . . .. You will either give me a son or we are over. . .. You are going to give me kids to replace them and keep giving me kids for the rest of my life. . .. It's this, or when I finally one day get free, I kill my sister and my parents, burn their property and die in a gun battle with the cops. That is something I can solemnly promise you. I would rather kill her and every kid she has than live without my son. So you see dear wife you have a choice." *Def.'s Letter to Wife* at 1.

Mr. Barnes mailed the letter to his sister on February 14, 2025, *Def.'s Letter to Sister* at 1, causing his sister to seek and obtain a PFA order against him. *PFA Order*

7

at 1-13.  In her request for a PFA order, Mr. Barnes's sister says that she is "very afraid for [her] life and the life of anyone who lives in [her] home to include [her] husband and [their] children."  *Id.* at 10.  A Judge of the Maine State District Court issued a temporary PFA order on March 11, 2025.  *Id.* at 1-3.  Mr. Barnes's letter to his wife is not dated and the Government does not reveal when he sent it to her.  *See Def.'s Letter to Wife* at 1-2.

This does not strike the Court as the language of an individual who has "been humbled by [his] experience" and is "truly remorseful for [his] actions."  *Def.'s Home Confinement Mot.* at 2.  In fact, given that Mr. Barnes is currently incarcerated for making threats, and, specifically, threats against a woman and her child, *see J.*; *Am. J.*; *Statement of Reasons*, his threats while incarcerated against his sister and wife are especially troubling.  While the indictment and Presentence Investigation Report (PSR) in this case indicate that Mr. Barnes's threatening conduct is not aimed exclusively at women, *see Indictment* at 2 (recounting the Defendant's threat to K.T., her son, and K.T.'s male partner); *Revised Presentence Investigation Rep.* ¶¶ 6, 12, 13 (ECF No. 40) (*PSR*) (describing Mr. Barnes's threats and violent conduct towards K.T.'s male partner), it nonetheless strikes the Court that many of his targets are indeed women.  *See PSR* ¶¶ 35-41 (providing the Defendant's criminal history of terrorizing, domestic violence assault, and violating protective orders, all involving female victims).

The Court has already ordered Mr. Barnes to participate in mental health treatment as a condition of supervised release upon his release from incarceration,

8

*Am. J.* at 5, but the Court urges Mr. Barnes to seek counseling within the BOP before he is released to make sure he understands what is causing him to threaten others, especially women, and to avoid such harmful and potentially illegal conduct in the future, harm to anyone, and reincarceration.

The Court dismisses Mr. Barnes's request for the Court to order him to be released on home confinement or to a halfway house.

### III. CHARLES ALLEN BARNES'S MOTION FOR APPOINTED COUNSEL

One additional issue warrants discussion. On June 2, 2025, the Court received another letter from Mr. Barnes in which he asserts that "[he] [is] entitled to a[n] attorney to defend [him]" and requests appointed counsel to assist him with his motion for home confinement. *Def.'s Counsel Mot.* at 1. The Court does not grant his request. "There is no right to counsel in postconviction proceedings," *Garza v. Idaho*, 586 U.S. 232 (2019), and "the appointment of counsel [on a post-conviction motion] must rest in the discretion of the court." *Dirring v. United States*, 353 F.2d 519, 520 (1st Cir. 1965). The First Circuit has instructed district courts addressing post-conviction motions for counsel to consider whether: (1) the defendant has "a fair likelihood of success on" his claim, (2) the issues raised are "factually complex and legally intricate," and (3) "the facts are largely undeveloped." *United States v. Mala*, 7 F.3d 1058, 1063-64 (1st Cir. 1993)).

The Court does not exercise its discretion to grant the Defendant's request for post-conviction counsel. For many of the reasons already explained above, the Court concludes that Mr. Barnes does not have "a fair likelihood of success" on his motion

9

asking the Court to instruct the BOP to change the location of his confinement. *See id.* Mr. Barnes's commutation motion also does not raise issues that are "factually complex and legally intricate," and it is not the case that "the facts are largely undeveloped." *See id.* The Court dismisses Mr. Barnes's request for appointed counsel.

### IV. CONCLUSION

The Court DISMISSES without prejudice Charles Allen Barnes's Motion for Home Confinement (ECF No. 63) and Motion to Appoint Counsel (ECF No. 65).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of June, 2025