UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:23-cr-00097-JAW |
| | ) |
| CHARLES ALLEN BARNES | ) |

**ORDER ON MOTIONS FOR SENTENCE REDUCTION AND RESENTENCING**

An inmate serving a federal sentence moves for a reduction of his sentence under the First Step Act and for a resentencing. Because the court concludes that he filed his First Step Act motion in the wrong court and because the court concludes that it may not address a motion for reconsideration after a conviction and sentence are final, the court rejects the inmate's motions.

**I.  BACKGROUND**

   **A.  Procedural History**

On September 7, 2023, a federal grand jury indicted Charles Allen Barnes in a one count indictment, charging that he had made an interstate communication of a threat to injury, a violation of 18 U.S.C. § 875(c) and further charging by special finding that he had intentionally selected the victim of the threat because of the actual and perceived race of the victim and her son. *Indictment* (ECF No. 3). On March 18, 2024, Mr. Barnes pleaded guilty to the charge in the indictment. *Min. Entry* (ECF No. 34). The Government and Mr. Barnes entered into a plea agreement, which stipulated that Mr. Barnes was not admitting or stipulating to the special finding in the indictment concerning his selecting the victim and her son due to their race. *Agreement to Plead Guilty (With Stips. and Appeal Waiver)* at 1 (ECF No. 26).

However, Mr. Barnes agreed that at sentencing the Government could request a three-level upward adjustment under U.S.S.G. § 3A1.1(a), which provides (among other things) for a three-level enhancement when a defendant intentionally selected any victim as the object of the offense of conviction because of the actual or perceived race, color, or ethnicity of the victim. *Id.*

The Court held a sentencing hearing on September 18, 2024. *Min. Entry* (ECF No. 51). Mr. Barnes objected to the three-level enhancement under § 3A1.1(a), *see Def.'s Sentencing Mem.* (ECF No. 46), and the parties presented testimony and argument on whether the three-level enhancement should be applied. Unlike typical sentencing issues, § 3A1.1(a) requires that the Government prove the enhancement not by a preponderance of the evidence, but beyond a reasonable doubt. *See* § 3A1.1(a) ("If the finder of fact at trial or, in the case of a plea of guilty or *nolo contendere*, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim . . . of the offense of conviction because of the actual or perceived race, color . . . ethnicity . . . of any person, increase by **3** levels"). The Court ruled that the Government had proven the § 3A1.1(a) enhancement beyond a reasonable doubt and applied the three-level enhancement, resulting in a guideline sentence of 27 to 33 months, a fine range of $10,000 to $100,000, a supervised release range of one to three years, and a $100 special assessment. *See Statement of Reasons*, Attach. 1, *Findings Affecting Sentence* at 1-2. The Court imposed a sentence of thirty months of incarceration, no fine, three years of supervised release, and a $100 special assessment. *J.* at 1-7 (ECF No. 54).

2

On July 18, 2025, Mr. Barnes filed a motion for a ruling on the applicability of the First Step Act (FSA) to his case, *Def.'s Mot. for Ruling on FSA* (ECF No. 67) (*Def.'s FSA Mot.*), and on August 4, 2025, he filed a motion for resentencing. *Def.'s Mot. for Resentencing* (ECF No. 69) (*Def.'s Resentencing Mot.*). On August 28, 2025, the Government responded to both motions. *Gov't's Opp'n to Def.'s FSA Mot.* (ECF No. 74) (*Gov't's FSA Opp'n*); *Gov't's Opp'n to Def.'s Mot. for New Sentencing* (ECF No. 75) (*Gov't's Resentencing Opp'n*). Mr. Barnes's reply was due by September 11, 2025, but he did not file a reply.

## II. THE FIRST STEP ACT MOTION

### A. Charles Allen Barnes's First Step Motion

In Mr. Barnes's FSA motion, he requested a ruling on the FSA's 500-mile requirement. *Def.'s FSA Mot.* at 1. Mr. Barnes states that under the FSA, inmates "should be housed within 500 driving miles of their release address." *Id.* Mr. Barnes acknowledges that there are exceptions, but he asks that the Court order the Bureau of Prisons (BOP) to explain "the reasons for the placement beyond the 500 mile range outlined in the FSA." *Id.* Mr. Barnes says that he requires an explanation from the BOP so that he can challenge his placement. *Id.* Mr. Barnes notes that the BOP spends "millions of taxpayer dollars" and he maintains that the BOP is able to transfer inmates across the country under a "cloak of deception." *Id.* Mr. Barnes says that this allows for "unchecked spending and violation of inmate rights." *Id.* Mr. Barnes lists his address at the FCI in Milan, Michigan. *Id.*

### B. The Government's First Step Opposition

The Government first responds that Mr. Barnes is in the wrong court. *Gov't's FSA Opp'n* at 1-2. The Government notes that Mr. Barnes is housed in Michigan and because he is challenging his current BOP placement, he must file a habeas corpus petition in Michigan, not Maine. *Id.* Next, even if his filing in Maine could be considered correct, Mr. Barnes has failed to exhaust his administrative remedies, which bars judicial review. *Id.* at 2. The Government asks the Court dismiss Mr. Barnes's petition or transfer it to the United States District Court for the Eastern District of Michigan. *Id.* at 1.

### III. DISCUSSION: FIRST STEP MOTION

Although Mr. Barnes's mistake is understandable, the Government is correct that he filed his FSA claim in the wrong court. Under federal law, a federal inmate may challenge the execution of his sentence by filing a petition for a writ of habeas corpus. However, a habeas corpus petition must be filed in the district where the inmate is incarcerated. *United States v. Sans*, No. 2:12-cr-00030-JAW-1, 2025 U.S. Dist. LEXIS 21264, at *14 (D. Me. Feb. 6, 2025) ("Authoritative precedent makes clear that petitions for habeas corpus may only be brought in the federal district of confinement, not the district where sentence was imposed") (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *McKenney v. United States*, No. 1:18-cr-00084-JAW-3, 2022 U.S. Dist. LEXIS 100068, at *4-5 (D. Me. June 6, 2022)).

Furthermore, as the Government points out, Mr. Barnes has a second hurdle to clear before filing a habeas corpus petition: the exhaustion of administrative remedies. An incarcerated individual "must exhaust any administrative remedies

4

with the BOP." 28 C.F.R. § 542.10-16. "Prisoners challenging their conditions of confinement are required to exhaust their administrative remedies before they may petition for habeas corpus relief under 28 U.S.C. § 2241." *Nygren v. Boncher*, 578 F. Supp. 3d 146, 151 (D. Mass. 2021); *Rogers v. United States*, 180 F.3d 349, 358 (1st Cir. 1999) ("Once administrative remedies are exhausted, *see* 28 C.F.R. §§ 542.10-16, prisoners may then seek judicial review. . . by filing a habeas petition under 28 U.S.C. § 2241"). Here, Mr. Barnes is complaining that the BOP has failed to explain his placement in Michigan, and by exhausting his administrative remedies, he would give the BOP an opportunity to do so. Thus, it seems particularly appropriate to enforce the exhaustion of administrative remedies requirement.

Finally, although the Court could order his petition transferred to Michigan, *United States v. Rivera*, 2:19-cr-149-LEW, 2025 U.S. Dist. LEXIS 129929, at *2-3 (D. Me. July 9, 2025), *aff'd*, 2025 U.S. Dist. LEXIS 149965 (D. Me. Aug. 5, 2025), the Court declines to do so in this case. The reason is that unfortunately for Mr. Barnes, his petition appears non-meritorious. Congress granted the BOP "broad discretion in deciding where to place inmates during their term of imprisonment." *Rabinowitz v. Grondolosky*, No. 1:15-cv-11559-IT, 2016 U.S. Dist. LEXIS 27871, at *2 (D. Mass. March 4, 2016). Pursuant to 18 U.S.C. § 3621(b), the BOP is authorized to "designate the place of the prisoner's imprisonment" by considering five enumerated factors. *Id.* Moreover, under § 3621(b), Congress has made placement decisions unreviewable by the courts. *See* 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a

5

designation of a place of imprisonment under his subsection is not reviewable by any court").

The First Circuit has written that "as long as the BOP 'considers' the five factors, it has virtually unlimited discretion to place inmates wherever it deems appropriate." *Muniz v. Sabol*, 517 F.3d 29, 40 (1st Cir. 2008). Moreover, review of the BOP's exercise of discretion is not within the scope of a federal court's habeas jurisdiction. *See Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003). A federal court may "not review, under the A[dministrative] P[rocedures] A[ct], the BOP's decisions as to how and where to place [an inmate]." *Rabinowitz*, 2016 U.S. Dist. LEXIS 27871, at *4-5.

Given this wall of authority against Mr. Barnes's arguments, the Court considers it wiser to dismiss the petition without prejudice so that Mr. Barnes may reflect on whether he wishes to file a petition for writ of habeas corpus in Michigan.

## IV. THE RESENTENCING MOTION
### A. Charles Allen Barnes's Resentencing Motion

In his motion for resentencing, Mr. Barnes says that "a mistake was unfortunately made in [his] sentencing," which resulted in an over harsh sentence." *Def.'s Resentencing Mot.* at 1. Mr. Barnes worries that the Court may "be used as a tool of political bias in future cases." *Id.*

Mr. Barnes cites *United States v. Benjamin Brown* in which he says a person repeatedly threatened to harm or kill Senator Susan Collins of Maine. *Def.'s Resentencing Mot.* at 2. Mr. Barnes says that Mr. Brown was sentenced to one year and one day in prison along with three years of supervised release. *Id.* Mr. Barnes

6

also points to *United States v. Castigliola* where the Court sentenced Mr. Castigliola to eighteen months of incarceration and three years of supervised release for repeated harassing phone calls and transmitting threats in interstate commerce. *Id.* at 2-3. By contrast, Mr. Barnes says he was sentenced to thirty months of imprisonment and three years of supervised release based, he says, on "a single voicemail . . . sent to a third party." *Id.* at 3. Mr. Barnes protests that he was sentenced to "double the amount of prison time, for a single count." *Id.*

Mr. Barnes then turns to his contention that "[e]vidence and testimony was also omit[t]ed from the defense that could have argued against the six point [substantial] step enhancement." *Id.* Mr. Barnes proposes that security cameras could have contained footage that demonstrated he never parked outside the victim's apartment and was "as far away as possible from the victim's area." *Id.* Mr. Barnes says that the "footage from these camera[]s was never [obtained] by law enforcement or the defense." *Id.* at 4. He also says that "testimony from Defendant's wife could have [corroborated] his w[h]ereabouts the entire morning," but his attorney declined to call Adrienne Barnes, because his lawyer thought the Court would disregard his wife's testimony. *Id.* Mr. Barnes also believes that his son, S.G.B., should have been called as a witness to document his assault and the victim's boyfriend had threatened Mr. Barnes. *Id.*

Finally, Mr. Barnes contends that the Court demonstrated bias because Mr. Barnes was "adhering to [a] certain political ideology." *Id.* Mr. Barnes asserts that because the Court "show[ed] [undue] and [unwarranted] harshness based on [his]

7

[perceived] ideological belief, [then] the sentence must be reduced or vacated and a new more just and fair sentence imposed." *Id.* at 5.

### B.   The Government's Resentencing Opposition

In opposition, the Government responds that Mr. Barnes's motion "has no legal foundation" and "should be dismissed." *Gov't's Resentencing Opp'n* at 1. First, the Government points out that "[t]here is simply no such thing as a 'motion to reconsider' an otherwise final sentence." *Id.* (quoting *United States v. Ortiz*, 741 F.3d 288, 292 n.2 (1st Cir. 2014) (quoting *United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006)). The Government says that to the extent Mr. Barnes is seeking reconsideration of the sentence under 28 U.S.C. § 2255, he should be directed to file an appropriate motion with the appropriate court.

### V.   DISCUSSION: RESENTENCING MOTION

Again, it is unfortunate, but Mr. Barnes has filed the wrong motion. In *Ortiz*, the First Circuit wrote "motions for reconsideration in criminal cases are not specifically authorized either by statute or by rule." *Ortiz*, 741 F.3d at 292 n.2. In other words, "[t]here is simply no such thing as a 'motion to reconsider' an otherwise final sentence." *Id.* (quoting *Dotz*, 455 F.3d at 648); *accord United States v. Andújar-Colón*, 43 F.4th 226, 230 (1st Cir. 2022); *United States v. Tanco-Pizarro*, 892 F.3d 472, 477 n.1 (1st Cir. 2018). "Such 'self-styled "motions for reconsideration of sentence" are 'unmoored in the [Federal Rules of Criminal Procedure].'" *Andújar-Colón*, 43 F.4th at n.1 (quoting *United States v. Gonzalez-Rodriguez*, 777 F.3d 37, 28 (1st Cir. 2015)).

8

The First Circuit went on to say that to the extent that a motion to reconsider is viable, it is based on a court's inherent authority to revisit their own orders. *Id.* But even if the Court could consider a motion to reconsider in some narrow circumstances, here, the Court runs into the general rule of finality. In *United States v. Harvey*, 20 F.4th 71 (1st Cir. 2021), the First Circuit concluded that once a judgment of conviction is final, a "sentence may not be modified by a district court except in limited circumstances" provided by statute. *Id.* at 75 (quoting *Dillon v. United States*, 560 U.S. 817, 824 (2010) (citing 18 U.S.C. § 3582(b)). Moreover, after *Ortiz*, the First Circuit emphasized that "a district court (apart from collateral proceedings such as habeas corpus or coram nobis) has not inherent power to modify a sentence after it has been imposed," and those "limited circumstances 'stem[] solely from . . . positive law." *United States v. Mercado-Flores*, 872 F.3d 25, 28-29 (1st Cir. 2017) (quoting *Ortiz*, 741 F.3d at 292 n.2).

Based on First Circuit precedent, the Court concludes that it may not rule on Mr. Barnes's motion for reconsideration since no such motion is recognized in the First Circuit. If Mr. Barnes wishes to raise similar issues in a form recognized by federal courts, he is free to do so within the strictures in this case.[1]

## VI.   CONCLUSION

The Court DISMISSES without prejudice Charles Allen Barnes's Motion for Ruling on First Step Act (ECF No. 67) and his Motion for Resentencing (ECF No. 69).

---

[1] Mr. Barnes could attempt to raise these issues by filing a petition under 28 U.S.C. § 2255, but such petitions have their own significant procedural and substantive hurdles, including a statute of limitations provision.

SO ORDERED.

<u>/John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of October, 2025